AMY M. SAMBERG, State Bar No. 351651
amy.samberg@clydeco.us
CLYDE & CO US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone:      480-746-4580
Facsimile:      480-746-4556

ALEC H. BOYD, State Bar No. 161325
alec.boyd@clydeco.us
CLYDE & CO US LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone:      415-365-9800
Facsimile:      415-365-9801

Attorney for Plaintiff ARCH SPECIALTY
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCH SPECIALTY INSURANCE COMPANY, a Missouri corporation. <br><br> Plaintiff, <br><br> v. <br><br> GENERAL LOGISTICS SYSTEMS U.S. INC., a California corporation, GENERAL LOGISTICS SYSTEMS US INTERIM, INC., a California corporation, and GENERAL LOGISTICS SYSTEMS NORTH AMERICA, INC., a Delaware corporation, <br><br> Defendants. | CASE NO.: <br><br> **ARCH SPECIALTY INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT; DEMAND FOR JURY** |

Arch Specialty Insurance Company ("Arch"), for its Complaint for Declaratory Judgment and Reimbursement against Defendants, alleges as follows.

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

## PARTIES

1.      Plaintiff Arch Specialty Insurance Company ("Arch") is a Missouri corporation with its principal place of business located in Jersey City, New Jersey.

2.      Arch is informed and believes and thereon alleges that Defendant General Logistics Systems U.S., Inc. ("GLS-US"), is a California corporation doing business in California with its principal place of business located in San Ramon, California, during all relevant times to this Complaint.

3.      Arch is informed and believes and thereon alleges Defendant General Logistics Systems US Interim, Inc. ("GLS-Interim"), is a California corporation doing business in California with its principal place of business located in San Ramon, California, during all relevant times to this Complaint.

4.      Arch is informed and believes and thereon alleges that Defendant General Logistics Systems North America, Inc. ("GLS-NA"), is a Delaware corporation doing business in California with its principal place of business located in San Ramon, California, during all relevant times to this Complaint.

5.      Arch is further informed and believes and thereon alleges that GLS-NA was formed as and formerly named "GLS US Holdings, Inc." until a name change dated September 6, 2018.

6.      Finally, Arch is informed and believes and thereon alleges that GLS-NA is the sole shareholder of GLS-US and GLS-Interim, respectively.[1]

## JURISDICTION AND VENUE

7.      This is a declaratory judgment action under 28 U.S.C. §§ 2201-02 and action for reimbursement from the GLS Entities for unjust enrichment relating to indemnity and defense obligations under an excess third-party liability policy issued by Arch to GLS-US. At the demand of the GLS Entities, Arch issued a payment of $4,000,000 ("Settlement Payment") to settle certain underlying lawsuits and obtain a full release of the GLS Entities. The Settlement Payment was made subject to a full reservation of rights including the right to seek a judicial determination on coverage

---

[1] GLS-US, GLS-Interim, and GLS-NA are referred to collectively herein as the "GLS Entities."

43088860

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT; DEMAND FOR JURY

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

under the policy and the right to seek reimbursement of the Settlement Payment from the GLS Entities.

8. **Jurisdiction.** Subject matter jurisdiction is proper under 28 U.S.C. § 1332, in that there is complete diversity among the parties, and the amount in controversy, exclusive of interest and costs, is in excess of $75,000.

9. **Venue.** Personal jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1391, in that the GLS Entities are California corporations and/or doing business in California with their principal place of business in the Northern District of California.

10. **Divisional Assignment.** The insurance contract at issue was issued to California corporation GLS-US in San Ramon, Contra Costa County, (and plaintiff's counsel is located in San Francisco, San Francisco County) therefore this case is properly assigned to the San Francisco division per Local Rule 3-2(c).

### GENERAL ALLEGATIONS

#### THE UNDERLYING LAWSUITS

11. Beginning in 2021, a total of nine (9) lawsuits were filed in the Eighth Judicial District Court, Clark County, Nevada by or on behalf of the Underlying Cyclist Claimants[2] against the GLS Entities, as well as Jordan Alexander Barson, David Franklin Merrill, Roadrunner Transport AZ, Inc., Roadrunner Couriers, LLC, Penske Truck Leasing Co., LP, and Penske Truck Leasing and Rental Company Business Trust aka Penske Leasing and Rental Company (the "Underlying Lawsuits").

12. The Underlying Lawsuits were consolidated by the Clark County District Court with the following Case Numbers: A-21-845359-C, A-22-846444-C, A-22-848990-C, A-22-8489059-C, A-22-851555-C, A-22-849847-C, A-22-50157-C, A-22-851569-C, and A-22-851301-C. True and correct copies of the last at-issue pleadings for the Underlying Lawsuits are attached as Exhibits 1 to 9.

---

[2] The plaintiffs in the Underlying Lawsuits were Jerome Ducrocq, Jose Vasquez, David Merrill, and the Estates and Heirs of five deceased, Ahmet Aksoy, Erin Ray, Michael Murray, Gerrard Nieva, Robin Ray, Thomas Trauger, and are referred to collectively herein as the "Underlying Cyclist Claimants."

43088860

3

Case No.

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT; DEMAND FOR JURY

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

13.    The Underlying Lawsuits were actions for money damages for bodily and personal injury suffered by the Underlying Cyclist Claimants. [Exhibits 1 to 9.][3]

14.    In the Underlying Lawsuits, it was alleged that, on December 10, 2020, the Underlying Cyclist Claimants were part of a group of cyclists participating in an annual, 130-mile ride on U.S. 95, from M Resort Spa Casino in Henderson, Nevada to Searchlight, Nevada.

15.    In addition to the riders, the group was accompanied by a safety escort vehicle being driven by David Merrill.

16.    It was alleged in the Underlying Lawsuits that, at approximately 9:39 a.m. on December 10, 2020, while traveling southbound on U.S. 95, the Underlying Cyclist Claimants and escort vehicle were struck from behind by a commercial truck being driven by Jordan Barson (the "Accident").  Five cyclists died as a result of the Accident, and three others were injured, resulting in the Underlying Lawsuits.

17.    It was further alleged that, at the time of the Accident, Jordan Barson was under the influence of drugs and subsequently charged with multiple criminal counts related to the accident.

18.    At all times relevant, Jordan Barson was an employee of Roadrunner Transport AZ, Inc. and/or Roadrunner Couriers, LLC (collectively "Roadrunner").

19.    At all times relevant, the truck being driven by Jordan Barson, a 2019 Isuzu NPR HD Box Truck, vehicle identification number JALC4W166K7008281 (the "Truck"), was owned by Penske Truck Leasing Co., LP and/or Penske Truck Leasing and Rental Company Business Trust aka Penske Leasing and Rental Company (collectively "Penske").

20.    At all times relevant, the Truck was leased by Penske to Roadrunner pursuant to a January 2019 Vehicle Lease Service Agreement between Penske Truck Leasing Co., LP and Roadrunner Couriers LLC (the "Lease").

21.    At the time of the Accident, none of the GLS Entities owned the Truck.

22.    At the time of the Accident, none of the GLS Entities leased the Truck from Roadrunner or Penske.

---

[3] For the purposes of this Declaratory Judgment Action, the allegations in the Underlying Lawsuits, specifically those asserted against the GLS Entities, were substantively identical.

43088860

4

Case No.

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT; DEMAND FOR JURY

23.    At the time of the Accident, none of the GLS Entities were in possession of the Truck.

24.    At the time of the Accident, none of the GLS Entities employed Jordan Barson.

25.    Upon information and belief, GLS US sells parcel delivery services to customers, and then uses a freight forwarder to contract motor carriers to fulfill the orders.

26.    Upon information and belief, GLS-Interim is a freight forwarder that provides contracting services to third-party motor carriers for the delivery of parcels.

27.    At the time of the Accident, the Truck and Jordan Barson were operating under an April 6, 2020 Transportation Services Agreement between Roadrunner Curriers and GLS-Interim (the "Freight Forwarder Agreement"). A true and correct copy of the Freight Forwarder Agreement is attached hereto as Exhibit 10.

28.    Under the Freight Forwarder Agreement, Roadrunner had the sole and exclusive responsibility and liability for its employees, independent contractors, and subcontractors in all respects related to providing the Services under the Agreement. [Exhibit 10, Section 2.d., p. 2.]

29.    Under the Freight Forwarder Agreement, Roadrunner was further responsible for providing its own vehicles and all other equipment necessary to provide the Services. [Exhibit 10, Section 4.b.ix, p. 3.]

30.    The Freight Forwarder Agreement further provided that GLS-Interim is a "federally-licensed freight forwarder and is therefore in the business of using motor carriers for transportation." [Exhibit 10, Section 4.b.i, p. 2.]

31.    Upon information and belief, at the time of the Accident GLS-US had no ownership interest in GLS-Interim and continues to have no ownership interest in GLS-Interim.

32.    GLS-US was not a party to the Freight Forwarder Agreement.

**THE ARCH EXCESS POLICY**

33.    Arch issued an Excess Third Party Liability Policy, Policy Number UXP1026202-01, to GLS-US with effective dates of December 1, 2019, through March 1, 2021 (the "Excess Policy"). A true and correct copy of the Excess Policy is attached hereto as Exhibit 11.

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

43088860

5

Case No.

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT; DEMAND FOR JURY

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

34.    The Excess Policy was originally scheduled to expire on December 1, 2020, but, by way of Endorsement 22, the expiration date of the Excess Policy was extended from December 1, 2020, to March 1, 2021. [Exhibit 11, p. ARCH_00051.]

35.    Endorsement 22 provides "this policy is extended from December 1, 2020, to March 1, 2021". The Endorsement continues "all other terms and conditions of this Policy remain unchanged." [Exhibit 11, p. ARCH_00051.]

36.    The Excess Policy provides, in part:

**EXCESS THIRD PARTY LIABILITY POLICY**

\*\*\*

This is excess insurance and only applies to those coverages for which underlying insurance is shown in Items 3.a. and 3.b. of Schedule A – Schedule of Underlying Insurance of this policy.

If any provision of the **controlling underlying insurance** conflicts with any provision of our insurance, then the provision of our insurance will apply. However, if our provision would result in broader coverage than is provided by **controlling underlying insurance**, then the provision of the **controlling underlying insurance** will apply. This insurance will not provide broader coverage than that provided by the **controlling underlying insurance**. This policy will not recognize reduction or exhaustion of the underlying limit of liability, retained limit, or self-insured retention by any claim, suit, demand or any payment of loss, cost or expense excluded by this policy or any endorsements to this policy.

\*\*\*

**I.    INSURING AGREEMENTS**

We will pay on behalf of the **insured**, except as otherwise stated in this policy, those amounts of loss for which coverage is provided

43088860

6

Case No.

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT; DEMAND FOR JURY

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

under the definitions, terms, conditions, limitations and exclusions of the **controlling underlying insurance** in effect at the inception of this policy and which exceeds the total Limits of Liability of **underlying insurance** as stated in Items 3.a. and 3.b. of Schedule A – Schedule of Underlying Insurance of this policy. The amount we will pay for **loss** is limited as provided under Section **II. LIMITS OF INSURANCE.**

If any policy of **underlying insurance** grants any coverage subject to a sub-limit of liability, this policy shall not offer such coverage. However, this policy shall recognize any reduction or exhaustion of limits by any payment under such coverage for **loss** covered by the **underlying insurance**.

**II. LIMITS OF INSURANCE**

    **a.** The Limits of Insurance shown in Item 2. of the Declarations and the rules below determine the most we will pay for all **loss** regardless of the number of:

        **1. Insureds**;

        **2.** Claims made or suits brought; or

        **3.** Persons or organizations making claims or bringing suits.

[Exhibit 11, p. ARCH_00006]

37.     Item 2. of the Declarations of the Excess Policy provides, in part:

"**Limits of Insurance**:… (a) Each occurrence Limit $4,000,000…"

[Exhibit 11, p. ARCH_00001]

38.     The Excess Policy provides, in part:

**III. DEFENSE**

    **a.** We will not be required to assume charge of the investigation or defense of any claim or any suit against an **insured**.

43088860

Case No.

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT; DEMAND FOR JURY

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

**b.** We will have the right, but not the duty, to be associated with the **insured** or the underlying insurers or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for payment under this policy.

**c.** If the total Limits of Liability of **underlying insurance** as stated in Items 3.a. and 3.b. of Schedule A – Schedule of Underlying Insurance of this policy are exhausted solely by payment of **loss** (including any defense expenses that reduce the limit of liability of the **underlying insurance**), we shall have the right but not the duty to investigate and settle any claim or assume the defense of any suit which in our opinion may give rise to payment under this policy. We may, however, withdraw from the defense of any suit or tender the continued defense to you if our applicable Limits of Insurance stated in Item 2 of the Declarations is exhausted by payment of **loss** (including any defense expenses that reduce the Limit of Insurance in accordance with Section **II. LIMITS OF INSURANCE**, Paragraph **h.** above).

If we exercise our rights under Paragraphs **III.b.** or **III.c.** above, we will do so at our own expense, subject to Section **II. LIMITS OF INSURANCE**, Paragraph **h.** above.

**IV. EXCLUSIONS**

It is agreed that this policy will not recognize reduction or exhaustion of the **underlying insurance** by any claim, suit, demand or any payment of **loss**, cost or expense excluded by this policy. The exclusions contained herein and any exclusions contained in endorsements to this policy apply regardless of whether any cause, event, material or product contributed concurrently or in any sequence to the injury or damage.

43088860

8

Case No.

## V. DEFINITIONS

Except as otherwise defined in this policy or in any endorsement to this policy, the definition of terms and phrases contained in this policy and any endorsements to this policy will be the same as those terms and phases are defined in the **controlling underlying insurance**.

a. "**Controlling underlying insurance**" means the policy or policies listed in Item 3.a. of Schedule A – Schedule of Underlying Insurance of this policy.

b. "**Insured**" means:

1. you; and

2. any person or organization qualifying as an **insured** under **controlling underlying insurance**, but only to the extent that:

   (a) coverage is provided by this policy; and

   (b) coverage is provided by **controlling underlying insurance**, or would have been provided but for the exhaustion of such policy's limit of liability.

c. "**Loss**" means amounts paid to settle a claim or suit, or satisfy a judgment, for which the **insured** is legally liable. The amounts that are payable by us are subject to deductions for subrogation, salvages, and any other recoveries made or that are available to an **insured**.

d. "**Occurrence**" has the same meaning as defined in the **controlling underlying insurance**.

\*\*\*

g. "**Underlying insurance**" means all policies and the Limits of Liability listed in Items 3.a. and 3.b. of Schedule A – Schedule of Underlying Insurance of this policy.

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

43088860

9

Case No.

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

***

[Exhibit 11, p. ARCH_00007-00011.]

39. Endorsement eighteen of the Excess Policy provides, in part:

**DESIGNATED AUTOMOBILE EXCLUSION**

This endorsement modifies insurance provided under the following:

EXCESS THIRD PARTY LIABILITY POLICY

It is agreed that regardless of whether or not coverage is afforded in the **controlling underlying insurance**, this policy does not apply to any claim, suit, demand or **loss** that alleges "bodily injury" or "property damage" that, in any way, in whole or in part, arises out of, relates to or results from the ownership, maintenance or use of any "auto" which is listed in the **SCHEDULE** below.

**SCHEDULE**

**1.** All autos you lease, hire, rent or borrow.

**2.** All autos that you do not own, lease, hire, rent or borrow that are used in connection with your business.

It is further agreed that regardless of whether or not coverage is afforded in the **controlling underlying insurance**, this policy does not apply to any claim, suit, demand or **loss** that alleges "bodily injury" or "property damage" that, in any way, in whole or in part, arises out of, relates to or results from any first party physical damage coverage, no-fault law, personal injury protection or auto medical payments coverage, or uninsured or underinsured motorist law.

43088860

10

Case No.

As used in this exclusion, the definitions of "bodily injury", "property damage", "auto", and covered "auto" are as defined in the **controlling underlying insurance**.

This policy will not recognize reduction or exhaustion of the **underlying insurance** by any claim or suit or payment of loss, cost or expense excluded by this endorsement.

All other terms and conditions remain unchanged

[Exhibit 11, p. ARCH_00042.]

40.    Endorsement nineteen of the Excess Policy provides, in part:

### DESIGNATED OPERATIONS EXCLUSION

It is agreed that regardless of whether or not coverage is afforded in the **controlling underlying insurance**, this policy does not apply to any claim, suit, demand or **loss** that alleges "bodily injury", "property damage" or "personal and advertising injury" that, in any way, in whole or in part, arises out of, relates to or results from operations performed by or on behalf of the insured that are designated in the **SCHEDULE** below:

### SCHEDULE

**Designated Operations**

Brokerage / Freight Forwarding

As used in this exclusion, the definitions of "bodily injury", "property damage" and "personal and advertising injury" are as defined in the **controlling underlying insurance**.

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

43088860

11

Case No.

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT; DEMAND FOR JURY

> This policy will not recognize reduction or exhaustion of the **underlying insurance** by any claim or suit or payment of **loss**, cost or expense excluded by this endorsement.

> All other terms and conditions of this policy remain unchanged.

[Exhibit 11, p. ARCH_00044.]

### SETTLEMENT OF THE UNDERLYING LAWSUITS

41.    The GLS Entities tendered the Underlying Lawsuits to Arch, and Arch reserved all its rights under the Excess Policy with respect to each of the Underlying Lawsuits. True and correct copies of the Arch reservation of rights letters are attached hereto as Exhibits 12 to 19.

42.    The Excess Policy did not contain a duty to defend provision, and no obligation under the Excess Policy is triggered without exhaustion of the underlying insurance.

43.    On December 13, 2023, the Underlying Cyclist Claimants issued a policy limits demand to the GLS Entities, seeking a total payment of $6,000,000, allocated as follows: Canal ($1 million); Lloyd's ($1 million); and Arch ($4 million). The GLS Entities and insurers were given thirty (30) days to respond to the policy limits demand. A true and correct copy of the December 13, 2023 demand letter is attached hereto as Exhibit 20.

44.    Following communications among the GLS Entities, Arch, Canal, and their counsel, including the GLS Entities' personal coverage and general counsel, on January 11, 2024, the GLS Entities, by and through their coverage counsel Foley & Lardner, issued a letter to Arch demanding that it pay the full limit of liability under the Excess Policy on behalf of all GLS Entities to settle the Underlying Lawsuits. A true and correct copy of the January 11, 2024 letter is attached hereto as Exhibit 21.

45.    On January 12, 2024, in response to the GLS Entities' demand, Arch informed the GLS Entities that it would pay the Excess Policy limit of liability to settle the Underlying Lawsuits and obtain a fully release of the GLS Entities by the Underlying Cyclist Claimants, but that the payment by Arch would be made subject to a full reservation of Arch's rights including the right to file a declaratory judgment action and seek reimbursement of the payment from the GLS Entities.

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

43088860

12

Case No.

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT; DEMAND FOR JURY

A true and correct copy of the January 12, 2024 letter is attached hereto as Exhibit 22. Arch's reservation of rights including the right to seek reimbursement was reiterated on April 23, 2024**.** A true and correct copy of the April 23, 2024 communication is attached hereto as Exhibit 23.

46.     At no point did any of the GLS Entities object to Arch's reservation of its right to seek Reimbursement of the Settlement Payment but continued to demand Arch make the policy limit payment and accepted and executed the Underlying Cyclist Claimants' settlement agreement.

47.     Following a protracted period of discussion and dispute amongst the parties in the Underlying Lawsuits, Arch was informed that the Underlying Cyclist Claimants executed claim releases in March and April 2025.

48.     The demanded policy limit payment by Arch, in the amount of $4,000,000, was issued as instructed by the GLS Entities' defense counsel on or about March 13, 2025, and the Underlying Lawsuits were dismissed with prejudice on June 5, 2025. A true and correct of the dismissal is attached as Exhibit 24. The dismissal, provided to Arch in August 2025, evidenced the full dismissal and release of the GLS Entities from any liability to the Underlying Plaintiffs.

## COUNT I

### DECLARATORY JUDGMENT

**(GLS-Interim and GLS-NA are not insureds under the Excess Policy)**

49.     Arch incorporates Paragraphs 1 through 48 of the Complaint as though fully set forth and stated herein.

50.     GLS-US, GLS-Interim, and GLS-NA are separate legal entities.

51.     The Named Insured under the Excess Policy is GLS-US. [Exhibit 11, p. ARCH_00001]

52.     There are no additional Insureds or additional Named Insureds under the Excess Policy.

53.     The Excess Policy provides that "you" and "your" refers to "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy or under controlling underlying insurance." [Exhibit 11, p. ARCH_00006]

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

43088860

13

Case No.

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT; DEMAND FOR JURY

54. The Excess Policy defines "controlling underlying insurance" as the policy or policies listed in Item 3.a. of Schedule A – Schedule of Underlying Insurance [Exhibit 11, Declarations] and which is "in effect at the inception of [the Excess Policy]." [Exhibit 11, p. ARCH_00006.]

55. The Excess Policy incepted on December 1, 2019.

56. For the purpose of automobile liability coverage, the controlling underlying insurance is the policy issued by Canal Insurance Company, Policy No. I-686992001-1, with effective dates of December 1, 2019 to December 1, 2020 (the "Underlying Canal Policy"). A true and correct copy of the Canal Policy is attached as Exhibit 25.

57. The only Named Insured on the Underlying Canal Policy is GLS-US. [Exhibit 25, Business Auto Declarations.]

58. The Excess Policy defines an Insured as GLS-US and "any person or organization qualifying as an Insured under controlling underlying insurance", but only to the extent coverage is provided by the Excess Policy "and" the Controlling Underlying Insurance. [Exhibit 11, p. ARCH_00011]

59. The Underlying Canal Policy provides that an "insured" includes the named insured, GLS-US, and anyone while using with GLS-US' permission an auto GLS-US owns, hires, or borrows. [Exhibit 25, Canal Business Auto Coverage Form, Form CA 00 01 10 13, Section II.A.1, p. 2 of 12.]

60. GLS-US did not own, hire, or borrow the Truck.

61. Neither GLS-Interim nor GLS-NA was using with GLS-US' permission an auto GLS-US owned, hired, or borrowed at the time of the underlying Accident.

62. Neither GLS-Interim nor GLS-NA is an Insured under the Excess Policy.

63. Coverage under the Excess Policy only applies to Insureds.

64. By the clear, explicit terms of the Excess Policy, there is no potential for coverage for GLS-Interim and GLS-NA in the Underlying Lawsuit.

WHEREFORE, Arch Specialty Insurance Company respectfully requests that this Court enter judgment in its favor and against GLS-Interim and GLS-NA, declaring they are not Insureds

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT; DEMAND FOR JURY

under the Excess Policy, and that no duty to defend or indemnify GLS-Interim or GLS-NA in the Underlying Lawsuit existed under the Excess Policy, and for such other relief as the Court deems just and appropriate.

## COUNT II

## DECLARATORY JUDGMENT

**(The Designated Automobile Exclusion Endorsement**

**bars coverage for GLS-US under the Excess Policy)**

65.    Arch incorporates Paragraphs 1 through 64 of the Complaint as though fully set forth and stated herein.

66.    The Excess Policy's Designated Automobile Exclusion (Endorsement 18) and the Excess Policy as a whole dictates that the Excess Policy only applies to claims arising out of the ownership, maintenance, or use of autos that are *owned* by GLS-US. [Exhibit 11, Endorsement 18, p. ARCH_00042.]

67.    The Excess Policy does not apply to claims arising out of, relating to, or resulting from, in whole or in part, the ownership, maintenance, or use of autos that are leased, hired, rented, or borrowed by GLS-US. [Exhibit 11, Endorsement 18, p. ARCH_00042.]

68.    The Excess Policy does not apply to claims arising out of, relating to, or resulting from, in whole or in part, the ownership, maintenance, or use of autos that GLS-US does not own, lease, hire, rent, or borrow that are used in connection with its business. [Exhibit 11, Endorsement 18, p. ARCH_00042.]

69.    The Excess Policy's exclusion of all claims associated with non-owned autos applies "regardless of whether or not coverage is afforded in the controlling underlying insurance." [Exhibit 11, Endorsement 18, p. ARCH_00042.]

70.    The Underlying Lawsuits arise out of, relate to, and resulted from, in whole or in part, the use of an auto.

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT; DEMAND FOR JURY

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

71.    At the time of the underlying accident, the Truck was being used in connection with GLS-US business; that is, the transportation of GLS-US parcels and/or parcels owned by GLS-US customers.

72.    The subject Truck was owned by Penske, not GLS-US.

73.    The subject Truck was leased from Penske by Roadrunner, not GLS-US.

74.    GLS-US did not own, hire, rent, or borrow the Truck.

75.    The Underlying Lawsuits arise out of, relate to, and resulted from, in whole or in part, the use of an auto that was not owned, leased, hired, rented, or borrowed by GLS-US.

76.    By the clear, explicit terms of the Policy, there is no coverage or potential for coverage for GLS-US in the Underlying Lawsuits.

WHEREFORE, Arch Specialty Insurance Company respectfully requests that this Court enter judgment in its favor and against GLS-US, declaring the Claim is excluded from coverage under the Policy, and that no duty to defend or indemnify GLS-US in the Underlying Lawsuit existed under the Excess Policy, and for such other relief as the Court deems just and appropriate.

## COUNT III

## DECLARATORY JUDGMENT

### (The Designated Automobile Exclusion Endorsement

### bars coverage for GLS-Interim and GLS-NA under the Excess Policy)

77.    Arch incorporates Paragraphs 1 through 76 of the Complaint as though fully set forth and stated herein.

78.    Even if it were determined that GLS-Interim or GLS-NA is an Insured under the Excess Policy, no coverage under the Excess Policy exists.

79.    Per the Designated Automobile Exclusion, the Excess Policy does not apply to any claim, suit, demand, or loss that alleges "bodily injury" or "property damage" that, in any way, in whole or in part, arises out of, relates to or results from the ownership, maintenance or use of any

autos that *you* do not own, lease, hire, rent, or borrow that are used in connection with *your* business. [Exhibit 11, Endorsement 18, p. ARCH_00042 (emphasis added).]

80. The Excess Policy provides that "you" and "your" refers to "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy or under controlling underlying insurance." [Exhibit 11, p. ARCH_00006.]

81. The only Named Insured under the Excess Policy or the Canal Underlying Policy is GLS-US.

82. Regardless of who may be an Insured, the Excess Policy excludes coverage for any claim that, in any way, in whole or in part, arises out of, relates to or results from the use of any auto that the Named Insured (GLS-US) does not own, lease, hire, rent, or borrow that are used in connection with the Named Insured's business.

83. The Underlying Lawsuits arise out of, relate to, and resulted from, in whole or in part, the use of an auto.

84. On the morning of December 10, 2020, the Truck was being used in connection with GLS-US business; that is, the transportation of GLS-US parcels and/or parcels owned by GLS-US customers.

85. The subject Truck was owned by Penske, not GLS-US, GLS-Interim, or GLS-NA.

86. The subject Truck was leased from Penske by Roadrunner, not GLS-US, GLS-Interim, or GLS-NA.

87. The Underlying Lawsuits, arose out of, related to, and resulted from the use of an auto that was not owned, leased, hired, rented, or borrowed by GLS-US, GLS-Interim, or GLS-NA.

88. By the clear, explicit terms of the Policy, there is no coverage or potential for coverage for GLS-Interim or GLS-NA in the Underlying Lawsuits.

WHEREFORE, Arch Specialty Insurance Company respectfully requests that this Court enter judgment in its favor and against GLS-Interim and GLS-NA, declaring the Claim is excluded from coverage under the Policy, and that no duty to defend or indemnify GLS-Interim or GLS-NA in the Underlying Lawsuit existed under the Excess Policy, and for such other relief as the Court deems just and appropriate.

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT; DEMAND FOR JURY

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

## COUNT IV

## DECLARATORY JUDGMENT

### (The Designated Operations Exclusion Endorsement

### bars coverage under the Excess Policy)

89.    Arch incorporates Paragraphs 1 through 88 of the Complaint as though fully set forth and stated herein.

90.    The Excess Policy's Designated Operations Exclusion, Endorsement 19, provides the Excess Policy does not apply to any claim, suit, demand, or loss that alleges "bodily injury" or "property damage" that, in any way, in whole or in part, arises out of, relates to or results from brokerage or freight forwarding operations performed by or on behalf of the Insured.

91.    The Excess Policy's designated operations exclusion applies "regardless of whether or not coverage is afforded in the controlling underlying insurance." [Exhibit 11, Endorsement 19, p. ARCH_00044.]

92.    The Insured under the Excess Policy is GLS-US.

93.    The Accident occurred while Jordan Barson and Roadrunner were transporting GLS-US packages under a freight forwarding agreement executed by GLS-Interim. [See Exhibit 10.]

94.    The Underlying Lawsuits arise out of, relate to, and resulted from, in whole or in part, freight forwarding operations performed by GLS-Interim on behalf of GLS-US.

95.    By the clear, explicit terms of the Policy, there is no potential for coverage for the GLS Entities in the Underlying Lawsuits.

WHEREFORE, Arch Specialty Insurance Company respectfully requests that this Court enter judgment in its favor and against the GLS Entities, declaring the Claim is excluded from coverage under the Excess Policy, and that no duty to defend or indemnify the GLS Entities in the Underlying Lawsuit existed under the Excess Policy, and for such other relief as the Court deems just and appropriate.

## COUNT V

## REIMBURSEMENT OF INDEMNITY PAYMENT;

## MONEY HAD AND RECEIVED

96.     Arch incorporates Paragraphs 1 through 95 of the Complaint as though fully set forth and stated herein.

97.     Arch's indemnity obligation is governed by the terms of the Excess Policy.

98.     Coverage under the Excess Policy only applies to an "insured" and the terms of the Excess Policy dictate that GLS-Interim and GLS-NA are not insureds under the Excess Policy.

99.     The Designated Automobile Exclusion Endorsement and the Designated Operations Exclusion Endorsement expressly and explicitly exclude the Claim and Underlying Lawsuits from coverage under the Excess Policy.

100.    Subject to its ongoing and complete reservation of rights, Arch expended funds to settle the Claim and Underlying Lawsuits brought against the GLS Entities, and to obtain a release of the GLS Entities from the Underlying Cyclist Claimants.

101.    The indemnity payment by Arch was made in response to a demand by the GLS Entities by and through their coverage counsel, Foley & Lardner, that Arch issue payment in response to the policy limits demand based on the representation that all GSL entities were insured.

102.    The indemnity payment by Arch was made subject to an express and timely reservation of rights, including the right to seek reimbursement from the GLS Entities. [Exhibits 22 and 23.]

103.    By the clear, explicit terms of the Excess Policy, there was no coverage or potential for coverage for any of the GLS Entities in the Underlying Lawsuits and Arch had no duty, and never had a duty, to defend or indemnify any of the GLS Entities in the Underlying Lawsuits.

104.    By paying the limit of liability settlement, Arch has conferred a benefit on the GLS Entities, including but not limited to, the $4,000,000 to which they were not entitled and for which there was no coverage.

105.    The GLS Entities have appreciated, accepted, and retained the benefit of the Settlement Payment.

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

106.    Arch has demanded that the GLS Entities reimburse Arch for the amount of the Settlement Payment, but the GLS Entities have not yet done so.

107.    Because Arch does not have and never had a duty to indemnify any of the GLS Entities in the Underlying Lawsuits, it would be inequitable for the GLS Entities to retain the benefit of the indemnification without repayment.

WHEREFORE, Arch Specialty Insurance Company respectfully requests that this Court enter judgment in Arch's favor and against the GLS Entities, declaring that the GLS Entities have been unjustly enriched and must reimburse the $4,000,000 expended in the indemnification of the GLS Entities in the Underlying Lawsuits, and for such other relief as the Court deems just and appropriate.

### PRAYER FOR RELIEF

WHEREFORE, Arch Specialty Insurance Company prays for judgment against the GLS Entities as follows:

i.      A declaration that GLS-Interim and GLS-NA are not Insureds under the Excess Policy;

ii.     A declaration that the Underlying Lawsuits are excluded from coverage under the Excess Policy by way of the Designated Automobile Exclusion Endorsement;

iii.    A declaration that the Underlying Lawsuits are excluded from coverage under the Excess Policy by way of the Designated Operations Exclusion Endorsement;

iv.     A declaration that no duty to defend or indemnify any of the GLS Entities in the Underlying Lawsuits existed under the Excess Policy;

v.      The reimbursement of the $4,000,000 paid by Arch for the indemnification of the GLS Entities in the Underlying Lawsuits;

vi.     For pre-judgment interest;

vii.    For recovery of all fees and costs available to Arch in the successful prosecution of this action; and

viii.   For such other and further relief as the Court deems just and appropriate.

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

43088860

20

Case No.

**JURY DEMAND**

Plaintiff demands a trial by jury as to all claims in this action.


Respectfully submitted,

Dated: January 9, 2026                CLYDE & CO US LLP


By:    */s/ Amy M. Samberg*

Amy M. Samberg
Alec H. Boyd

Attorneys for Plaintiff
ARCH SPECIALTY INSURANCE COMPANY

Clyde & Co US LLP
1 North Central Avenue, Suite 1030
Phoenix, Arizona 85004
Telephone: (480) 746-4580

43088860

21

Case No.

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT; DEMAND FOR JURY